STATE of Missouri, Respondent,

v.

Alvin Eugene COUNTS, Appellant.

No. 39624.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Oct. 10, 1978.

Jack L. Duncan, Flat River, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto and Eric Martin, Asst. Attys. Gen., Jefferson City, Gary E. Stevenson, Pros. Atty., James E. Pennoyer and Thomas L. Ray, Jr., Farmington, for respondent.

CLEMENS, Judge.

The state charged defendant Alvin Counts with committing three acts of sodomy on his twelve-year-old stepson, Douglas Aubuchon. A jury found defendant guilty on the first two counts but not guilty on the third. The jury was unable to agree on punishment and the trial court assessed punishment at two concurrent life terms.

Defendant has appealed, contending the victim's testimony was so contradictory and unconvincing that it was insufficient to sustain the convictions absent corroborating testimony. The state, citing *State v. Lee*, 404 S.W.2d 740[12, 13] (Mo.1966), responds that there was clear evidence of guilt and hence no need for corroboration. The issue so framed calls for a recitation of the pertinent evidence.

Defendant and Douglas' mother had been married twice, from 1964 to 1970, and from 1973 to 1977. They had three other, younger children. During the marriages the parties had several separations, and Douglas sometimes lived with his maternal grandmother, Jerri Douglas. The charged acts occurred during the second marriage, when Douglas was thirteen years old.

The only testimony of the charged sodomous acts came from Douglas. His testimony as to each of these:

May 30, 1975 (Count II): While Mrs. Counts was hosting an overnight girls' bunking party, defendant took Douglas on an overnight fishing trip. Defendant told Douglas to lay beside him and to take off his pants; defendant then inserted his penis in Douglas' rectum. Douglas did not resist "much" because "he was holding me" and "if I'd fight him he hurt me."[1] He first related this episode to his grandmother several months later.

November 23, 1976 (Count I): While Douglas' mother had gone to the store defendant had the other children leave the house. He called for Douglas to come into a room where defendant was lying down, and on defendant's order Douglas took defendant's penis into his mouth. Douglas did not struggle because "I knew he'd hit me; he's done it before when I struggled."[2] At the preliminary hearing Douglas had denied the occurrence of November 23, but at trial explained he had been confused as to the date.

We omit Douglas' testimony concerning defendant's conduct on August 7, 1976 (Count III), on which the jury found de-

---

1. The Testimony:
   "A. Well, he said, 'Come here,' and I went over there and then he told me to pull down my pants. And I did. And he told me to lay down and I did what he said.
   Q. What happened next, Doug?
   A. Then he pulled down his pants and then he raped me.
   Q. Was it in your rear, Doug?
   A. Yes.
   Q. Could you tell it was his sexual organ?
   A. Yes.
   Q. Did it go in?
   A. Yes.
   Q. How long did it last?
   A. Oh, anywhere from about four minutes.

2. The Testimony:
   "A. Well, he hollered for me and he said, 'Come here, Doug.' And I just figured he wanted me to get him coffee and stuff. I always get it for him. And then he was laying there with his pants down, and he told me to get down there and suck him.
   Q. What happened next, Doug? Tell these gentlemen.
   A. Well, I done what he told me to do, and then after that I, after he got finished, I went and spit it out in the bathroom.
   Q. Did he have his sexual organ in your mouth, Doug?
   A. Yes.
   Q. And then you went to the bathroom and spit it out?
   A. Yes.
   Q. Did you struggle or fight or anything, Doug?
   A. No.
   Q. Why?
   A. Because I knew he'd hit me.
   Q. How did you know that?
   A. Because he said he'd do it. He's done it before when I've struggled."

fendant not guilty. No evidence of that episode is helpful to defendant other than that the testimony refuted the occurrence being on that date.

Other evidence of defendant's relationship and conduct with Douglas came from prolonged cross examination of Douglas:

Two or three weeks after the May 30, 1975 incident defendant again took Douglas hunting and at least tried anal penetration; Douglas struggled but defendant was holding him tight. A long time before, when Douglas was seven or eight, defendant began making Douglas "suck him" and Douglas "did that all the time." At the beginning, Douglas struggled, but later gave up because defendant not only threatened to kill him but many times slapped and beat him and pulled his hair.

Because he feared defendant, Douglas was afraid to tell others but finally, after the two alleged incidents he told his grandmother about them. They then told his uncle who told Douglas' mother and she reported the information to a juvenile officer.

Douglas testified of his feelings toward defendant. He did not hate him but would like to get even with him for what he had done.

On re-direct examination Douglas testified he remembered the dates of the two charged offenses because he connected the times with other occasions, such as holidays or "something special that happened to me." He said at the beginning he didn't know all the other acts of sodomy were wrong; that defendant sometimes had him commit oral sodomy two or three times a week when his mother was at work.

Defendant testified to a normal step-parent relationship with Douglas and denied all the sodomous acts Douglas had testified to. As to the August 7, 1976 charge in which defendant was found not guilty, defendant and his father and mother testified that on that date he was in their home, recovering from an automobile collision.

In rebuttal Patricia Herndon testified she had known Douglas' family well, and on numerous occasions had seen defendant grab and shake Douglas and call him vulgar names. Defendant denied all this in surrebuttal.

As a premise to his contention that the conviction cannot stand because the state failed to present corroborating testimony,[3] defendant argues that Douglas' testimony as to the two charged offenses was "contradictory and unconvincing." We deny that premise; as to the two charged offenses, quoted above, Douglas' testimony was reasonably straightforward and definite, and was contradicted only by defendant's self-serving denial.

■ Defendant makes specific arguments as to what he considers weaknesses in Douglas' testimony. He points to Douglas' prolonged lack of complaint. The state responds by citing Douglas' tender years when the assaults began and his fear of defendant's threats and physical abuse. Next, defendant relies on Douglas' admitted animosity toward defendant. Neither of these arguments, nor others raised by defendant, detracts from the submissibility of the state's case; they go only to Douglas' credibility, which the jury obviously accepted.

Considering the state's evidence in its entirety on the two challenged offenses we hold it was neither contradictory nor unconvincing.

Judgment affirmed.

REINHARD, P. J., and GUNN, J., concur.

---

3. Citing *State v. Bursley*, 548 S.W.2d 586, l. c. 589 (Mo.App.1976).