**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James Leroy BAILEY,
Defendant-Appellant.**

**No. 49619.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 13, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 19, 1986.

Application to Transfer Denied
Sept. 16, 1986.

---

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Sharon M. Bush, Mark V. Clark, Columbia, for defendant-appellant.

SIMON, Judge.

Defendant, James Leroy Bailey, appeals his sentence pursuant to a jury verdict of the Circuit Court of St. Charles County

finding him guilty of burglary in the first degree (Count I), attempted rape (Count II) and armed criminal action (Count III). He was sentenced to serve consecutive terms of five years on Count I, fifteen years on Count II, and ten years on Count III.

On appeal, defendant contends the trial court erred: (1) in admitting his signed written statement in that it was made out of fear of the police and therefore a product of coercion and duress, in violation of his constitutional rights and further his waiver of his *Miranda* rights was not knowing and intelligent; (2) in overruling his motion for acquittal at the close of the state's evidence, as the evidence without the written statement was insufficient to establish the requisite elements for the burglary count; and (3) by failing to set aside the verdict as the prosecutor's closing statements were prejudicial to the defendant.

The following facts were established at trial. On July 19, 1984, the victim was awakened about 12:15 a.m. by a naked man lying on top of her. Her hands were pinned back. A struggle ensued and the victim received cuts to her throat and fingers from a pocketknife wielded by her assailant. She repeatedly asked her assailant to stop. During the struggle, the victim and assailant were talking and he said a friend had told him about women in the neighborhood who lived alone and how to pop windows and break into mobile homes. After again asking her assailant to stop, he did so and said "just don't call the law." He got up, put on his clothes and left.

At trial, the victim testified that she recognized the defendant as the assailant. A streetlight illuminated the bedroom through the window. Also she recognized the defendant due to his distinct articulation of words. She stated that she had seen and spoken with the defendant on previous occasions. He had dated her neighbor's stepdaughter and she had spoken to him before. She testified that defendant had been in her home on previous occasions.

After she reported the attack to the O'Fallon police department, an investigation proceeded and a search warrant was obtained about 10 a.m. for a pocketknife and bloody underwear. Two police officers went to defendant's home, searched the home and arrested the defendant and found a pocketknife on the defendant during their search, but did not find the bloody underwear. Defendant was not read his rights at this time. Defendant was taken down to the police station where he was booked and fingerprinted. Defendant was then read his *Miranda* rights and he initialed each right and signed the waiver form.

The police interrogated defendant until about 3:30 p.m. Defendant testified at trial that verbal threats insinuating physical harm were made to him by the police officers during the period of questioning. At about 3:30 p.m., defendant requested "some time to think alone" and the questioning was stopped. About 15–20 minutes later a police officer asked defendant if he had had enough time to think. Defendant then made an oral statement and wrote and signed a statement.

Defendant's statements indicate he had smoked marijuana and was feeling high and he broke into the victim's trailer through a window to get some alcohol. Once inside, he did not find any alcohol and decided to take off his clothes and go into the victim's bedroom. He took his pocketknife and laid down on top of her and a struggle ensued and both were cut by the knife. He stopped and she agreed not to call the police. He got up and put on his clothes and left.

At trial, the state presented evidence of the defendant's fingerprints on the window, the point of entry. The police officers involved in the questioning of the defendant testified that no threats had been made to the defendant and that no necessities or rights of defendant had been denied.

Defendant had several witnesses testify in his defense. His parents testified that he was at home on the night in question. His girl friend testified that defendant had

been near the window on a previous occasion while she was baby-sitting the victim's children. The defendant testified that he did not leave his home on the night of the attack.

Defendant first contends that the trial court erred in admitting his written confession. He claims the statement is a product of duress and coercion and that the waiver of his *Miranda* rights was not knowing and intelligent. Defendant maintains that his inability to perceive the seriousness of the crime and its consequences vitiates his ability to waive his rights knowingly and intelligently.

Initially, we must determine whether defendant's point has been preserved for appeal. Defendant originally filed a motion to suppress the oral and written statements on the grounds that the statements were made under coercion and duress, that defendant was not advised of his constitutional rights, and that the arrest was unlawful. The motion was denied. At trial, defense counsel made an objection to admitting the written statement into evidence after its contents had been stated by the testifying police officer. The grounds given for the objection were that it was prejudicial, made without the benefit of counsel and made under duress. Defendant's motion for new trial alleges duress and veiled threats, citing error with the court's denial of the motion to suppress the statement.

■ On appeal, defendant contends that his waiver of his *Miranda* rights was not knowing and intelligent, in that he did not understand what a felony was or that he might receive thirty years in the penitentiary. To preserve an issue for appeal, the trial objection must be specific and cannot merely restate the conclusions of the motion to suppress. *State v. Redd*, 550 S.W.2d 604, 607-8 (Mo.App.1977). The issue must also be presented in the motion for new trial. *State v. Rayford*, 611 S.W.2d 377 (Mo.App.1981).

Defendant's argument that he did not knowingly and intelligently waive his *Miranda* rights has not been preserved for review. This point is not one of the specific allegations in the motion to suppress, it was not stated in his objection at trial and it is not part of the motion for new trial. In any event, we find no error, plain or otherwise.

■ Defendant also alleges that admission of the statements violated his constitutional rights in that the police failed to give defendant *Miranda* warnings a second time prior to questioning him after he had requested and received "some time to think alone." Defendant contends that he should have received a fresh set of *Miranda* warnings prior to the initiation of questioning after the break. We do not find defendant's request for "time to think" alone to constitute a request to cut off questioning and to remain silent. *State v. Woodward*, 587 S.W.2d 287, 289 (Mo. App.1979). In addition we do not find that the questioning after the break constituted a second interrogation so as to require a fresh set of *Miranda* warnings. The mere lapse of time between the receipt of the *Miranda* warnings and the giving of the incriminating statements does not require exclusion of the evidence. *State v. Battles*, 585 S.W.2d 213, 214 (Mo.App.1979). Further, even if the questioning following the break constituted a second interrogation, *Miranda* warnings need not be given each time the accused is questioned. *State v. Woodward*, 587 S.W.2d at 289; *State v. Brown*, 601 S.W.2d 311 (Mo.App.1980).

■ The allegation of duress appears in the motion to suppress, the objection made at trial and the motion for new trial and therefore has properly been preserved for review. Once the admissibility of a statement has been properly challenged as to its voluntariness, the burden rests upon the state to prove it is voluntary by a preponderance of the evidence. *State v. Buckles*, 636 S.W.2d 914 (Mo. banc 1982). The test is whether the totality of the circumstances deprived the defendant of a free choice to admit, deny or refuse to answer and whether the psychological or physical coercion was of such a degree as

overpowered defendant's will at the time the statements were made. *Id.* at 923.

In determining whether or not a statement was obtained by mental coercion, the age, experience and intelligence of the accused must be considered along with other factors such as lack of education, infirmity and unusual susceptibility to coercion. *State v. Flenoid,* 642 S.W.2d 631, 634 (Mo. banc 1982). No single factor is dispositive. *Id.* In addition, the state is not required to negate every possible fact which could raise an issue as to the voluntariness of a confession. *Id.*

At trial, defendant testified that verbal threats insinuating possible future physical force were made during the period of questioning. He admitted knowing that by signing the statement, he caused himself a lot of trouble but he wrote the statement and signed it mostly because he was scared. The police officer conducting the questioning testified that no verbal or physical threats were made. The officer testified that defendant was informed of the charges and the seriousness of the crime. Defendant testified that he knew the charges and their seriousness. The evidence presented showed that defendant did not request food or water. Defendant was allowed a telephone call and spoke to a neighbor, and given cigarettes upon request.

Defendant was seventeen years old at the time of the confession. There is no claim that he suffered from any disability nor that he does not have the intelligence requisite with his age. Clearly, substantial evidence supports the characterization of the statement as voluntary. Defendant's point is without merit.

Defendant next contends that his motion for acquittal should not have been denied. Defendant maintains that without the written statement referred to above there is no evidence of a requisite element of burglary, intent to steal. As we have already determined that the statement was properly elicited by the police and properly admitted by the court, no further discussion on this point is necessary.

Defendant's third point alleges that the trial court committed plain error by failing sua sponte to set aside the verdict because the prosecutor's statements during closing argument were prejudicial to defendant in the jury's deliberations and assessment of punishment. No objection to the statements were made during trial.

In particular, defendant objects to statements to the jury that they should send a message out to would be rapists and that if the jury did not do its duty and find the defendant guilty all the work of the law enforcement persons would be wasted. The prosecutor also characterized the defendant as being in a group with people who are "bad" and "evil."

Supreme Court Rule 29.12(b) states that plain errors affecting substantial rights may be considered in the court's discretion when the court finds manifest injustice or a miscarriage thereof has resulted. Closing argument will rarely affect substantial rights so as to result in plain error. *State v. Mayfield,* 562 S.W.2d 404, 412 (Mo.App.1978). A trial court has broad discretion in its control of closing argument. *State v. Fuhr,* 660 S.W.2d 443, 448 (Mo.App.1983).

A prosecutor's closing argument may stress the duty of the jurors, the necessity of conviction to deter further similar conduct by others and the evils of minimum punishment. See *State v. Harris,* 664 S.W.2d 677, 681 (Mo.App.1984). In *Harris,* such remarks did not create a personal hostility of jurors towards the defendant and the weight of the evidence overwhelmingly established the defendant's guilt. The use of characterizations is prejudicial error only if they cannot be linked to some evidentiary basis. *State v. Fuhr,* 660 S.W.2d at 448.

Here, the statements are very similar to those held not prejudicial in *Harris.* Evidence had been properly presented that the defendant in this case had committed a burglary and an attempted rape with a

dangerous weapon. Accordingly, we find that the prosecutor's statements in this case did not create manifest injustice by placing prejudicial inferences in the minds of the jurors.

Judgment affirmed.

KAROHL, P.J., and GARY M. GAERTNER, J., concur.